RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  rb@lnbyb.com; kjm@lnbyb.com

Proposed Counsel for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>GLOBAL WINDCREST I, LLC,<br><br>        Debtor and Debtor in Possession. | Case No.: 21-03935-LT11<br><br>Chapter 11 Case<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 1015 OF THE LOCAL BANKRUPTCY RULES; DECLARATION OF C.W. TUCKER LEWIS IN SUPPORT THEREOF** |

Pursuant to Rule 1015-1(b) of the Federal Rules of Bankruptcy Procedure, Rule 1015 of the Local Bankruptcy Rules, and the "Guidelines For The…Joint Administration Of Related Debtor Entities" (*see* CSD 1514), Global Windcrest I, LLC ("GW 1"), chapter 11 debtor and debtor in possession, hereby moves, on an emergency basis[1], for the entry of an order jointly administering

---

[1] The Debtors submit that expedited, interim relief is appropriate in order for the Debtors and other parties to immediately be able to realize the cost and time savings anticipated to be achieved by joint administration. For example, the Debtors anticipate filing a number of motions and applications during the first few weeks of these cases, and believe that entry of a joint administration order now will assist with reducing duplicative and potentially confusing multiple, substantially similar filings.  The Debtors' proposed interim order provides for an opportunity for creditors to oppose the relief requested herein.

1

the chapter 11 bankruptcy case of GW 1 with the chapter 11 bankruptcy case of Global Windcrest II, LLC ("GW 2", and together with GW 1, the "Debtors"), and designating the case of GW 1 as the lead case.  A similar motion for joint administration has been filed in GW 2's bankruptcy case. Through the motions, the Debtors request that this Court enter an order in substantially the form attached as Exhibit 3, providing for the joint administration of these cases.

## I.    STATEMENT OF FACTS

1.    On October 1, 2021, the Debtors each commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

2.    GW 1 is the owner of that certain real property located at 8940 Four Winds Drive, Windcrest, Texas 78239 (the "GW 1 Property") and GW 2 is the owner of that certain real property located at 8930 Four Winds Drive, Windcrest, Texas 78239 (the "GW 2 Property" and together with the GW 1 Property, the "Properties").  The Properties are adjacent office buildings, as shown in the map attached as Exhibit 1 to the annexed Declaration of C.W Tucker Lewis (the "Lewis Declaration").

3.    GW 1 is a limited liability company with two members: Aulukista, LLC ("Aulukista"), which purportedly holds 68% of the membership interest in GW 1; and Global Windcrest Partners, LLC, which holds 32% of the membership interests in GW 1.  GW 2 is also a limited liability company with the same two members holding the same respective percentage of membership interests.

4.    Global Building, LLC is the manager ("Manager") of both GW 1 and GW 2.  The managing member and chief executive officer of Global Building, LLC is C.W. Tucker Lewis. Pursuant to the Debtors' respective Operating Agreements, the Manager is vested with broad powers and authority to manage the business and affairs of the Debtors.

5.    GW 1 was formed to acquire, improve, renovate, lease, and sell a recently vacated five (5) story office building on approximately 4.5 acres of land (the GW 1 Property).  The GW 1 Property's $3.5 million acquisition cost was to be paid by member contributions, and the extensive

anticipated construction, renovation, improvement work necessary to rehabilitate the building and make it suitable for upscale office occupancy was to be funded through debt – i.e. borrowing.

6.    GW 2 was formed later, and acquired the contiguous property of approximately 3 acres on which an office building with improvement possibilities and upside potential was likewise present.

7.    Aulukista is indirectly owned and controlled by an entity known as Calista Corporation ("Calista") through various wholly-owned subsidiaries, all of which are under the control of an individual named Sharon Lechner, who purports to be the President of each such Calista subsidiary.  After receiving investment documentation and asking numerous questions, Calista expressed interest in providing equity for the GW 1 project (i.e. acquiring a membership interest through one of its multiple subsidiaries), but *only* on the condition that Calista be allowed to use another of its affiliates/subsidiaries as lender, providing the financing necessary to fund construction, renovation, and improvement of the GW 1 Property as well.

8.    Ultimately, Calista agreed to acquire the majority membership interest in GW 1 by and through Aulukista, with Sharon Lechner as Aulukista's president, as Calista's conduit.

9.    GW 1 was formed in April 2018 and took title to the GW 1 Property one month later.  In April 2019 Calista utilized another of its wholly-owned subsidiaries, Settler's Bay Properties, Inc. ("Settler's Bay"), with Sharon Lechner again as President, to provide the renovation/construction loan necessary to rehabilitate and improve the GW 1 Property, pursuant to that certain Loan Agreement dated April 19, 2019, pursuant to which GW 1 borrowed the sum of $7 million.  On April 22, 2019, a first position trust deed was recorded on the GW 1 Property in Texas.

10.    These bankruptcy cases were filed as a result of pending and numerous disputes between and among the Debtors, and Aulukista, Settler's Bay and Calista, including, without limitation, disputes regarding the refinancing of the GW 1 Property, the funding for the GW 2 Property, and what the Debtors believe constitutes a coordinated scheme by Aulukista, Settler's Bay and Calista to improperly obtain ownership of the Properties to the detriment of all other

creditors and interest holders of the Debtors, as discussed in detail in that certain "Amended Cross-Complaint For Injunctive And Declaratory Relief" filed by the Debtors against Aulukista and Calista, which is pending in the Superior Court of the State of California County of San Diego, Central Division, Case No. 37-2021-0022783-CU-MC-CTL.[2]   A true and correct copy of the amended cross-complaint is attached as Exhibit 2 to the Lewis Declaration.

11.    These bankruptcy cases were filed to stop the foreclosure sale of the GW 1 Property, and provide a breathing spell for the Debtors to attempt to obtain refinancing and/or funding, and/or restructure their debt obligations, on terms and in a manner that is in the best interest of all creditors and interest holders.  If Aulukista, Settler's Bay, and Calista are permitted to further execute their plan to improperly obtain ownership of the Properties in violation of their respective obligations and duties to the Debtors and other interest holders, and a foreclosure occurs, not only would GW 1 lose its ownership interest in the GW 1 Property, but GW 2 will be disadvantaged  because its tenants will not have legal access to the amenities on the GW 1 Property pursuant to a reciprocal access agreement between the Debtors, because it may very well not be able to meet its required parking ratio, and GW 2 may be in breach of leases it has already executed.  Moreover, assuming Calista, Aulukista, Settler's Bay and Ms. Lechner are unsuccessful in their plan to misappropriate the entirety of the GW 2 Property as well, GW 2 will be competing against Calista (which will then, through Settler's Bay, own the contiguous GW 1 Property) for tenants and will be at a disadvantage in doing so because of the lack of amenities and adequate parking.

## II.    BASIS FOR RELEIF

Joint administration of the Debtors' cases is warranted and appropriate under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, which provides in relevant part that the Court may order the joint administration of estates when two or more petitions are pending in the same court as a debtor and an affiliate. The Debtors share common ownership.  Each Debtor is owned by the exact same entities in the exact same percentages.  The Manager of the Debtors is the same entity.

---

[2] The underlying complaint filed in that matter by Aulukista and Calista against the Debtors and the Manager has been dismissed, but the Debtors' cross-complaint remains pending.

As such, the Debtors are "affiliates" and "insiders" as those terms are defined in the Bankruptcy Code. *See* 11 U.S.C. § 101.

Additionally, GW 1's secured creditor Settler's Bay is affiliated with GW 1's and GW 2's majority member Aulukista, through common ownership of both entities by Calista and identical management of both entities by Sharon Lechner, who is President of both Aulukista and Settler's Bay.

Additionally, the Debtors appear to share some common creditors, as set forth on the each Debtors' respective Verification Of Creditor Matrix (*see* Docket Entry No. 1).

Finally, the Debtors' respective real estate assets share physical proximity – indeed, they are adjacent and there appears to be a reciprocal access agreement between the Debtors.

The Debtors believe that the joint administration of these cases will avoid duplicative expenses and will ensure that creditors and interested parties in the cases will receive appropriate notice of all pertinent matters.  In addition, the Debtors believe that the joint administration of these cases, including the use of a single pleadings docket, the combining of notices to interested parties of both estates, and the joint handling of purely administrative matters will aid in expediting the cases and rendering the process less costly, without prejudicing the substantive rights of any creditor.

Granting the joint administration of these two cases will eliminate the further need for the Debtors to file duplicative motions and orders in each of these cases when seeking relief that is common to both Debtors, will avoid the further waste of judicial resources related to, for example, the docketing of identical motions, declarations and orders in each of the cases, and will allow the Debtors to avoid copying costs and service costs associated with filing and serving duplicative motions and other pleadings in the cases that seek collective relief.

In the event that the Court orders the joint administration of these cases, the Debtors respectfully request that the Court approve the following caption and that GW 1's case be designated as the lead case:

///

1   ///

2   ///

3

4   In re:                                                    Case No.: 21-03935-LT11

5   GLOBAL WINDCREST I, LLC,                                  [Jointly administered with: 21-03938-LT11]

6                          Debtor.                            Chapter 11 Cases

7   _____

8   In re:

9   GLOBAL WINDCREST II, LLC

10                         Debtor.

11  _____

12  ☐  Affects both Debtors

13  ☐ Affects Global Windcrest I, LLC

14  ☐ Affects Global Windcrest II, LLC

15

16                              **III.    <u>CONCLUSION</u>**

17          Accordingly, the Debtors respectfully requests that this Court enter an order, in the form

18  lodged concurrently herewith:

19          (a)     authorizing the joint administration of the Debtors' cases;

20          (b)     approving the form of caption suggested herein; and

21          (c)     granting such other and further relief as the Court deems just and proper.

22  Dated: October __, 2021                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

23                                             By:  ___/s/ Krikor J. Meshefejian_____
                                                      RON BENDER
24                                                    KRIKOR J. MESHEFEJIAN
                                                      LEVENE, NEALE, BENDER, YOO
25                                                    & BRILL L.L.P.
                                                      Proposed Counsel for Chapter 11 Debtor and
26                                                    Debtor in Possession

27

28

## DECLARATION OF C.W. TUCKER LEWIS

I, C.W. Tucker Lewis, hereby declare as follows:

1.      I am the chief executive officer and managing member of Global Building, LLC. Global Building, LLC is the manager ("Manager") of Global Windcrest I, LLC ("GW 1") and Global Windcrest II, LLC ("GW 2" and together with GW 1, the "Debtors"). In my capacity as the chief executive officer and managing member of the Manager, I manage the business and affairs of each of the Debtors, and I have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Debtors, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Debtors' respective businesses. I have personal knowledge of the facts set forth herein, unless otherwise indicated.

2.      On October 1, 2021, the Debtors each commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

3.      GW 1 is the owner of that certain real property located at 8940 Four Winds Drive, Windcrest, Texas 78239 (the "GW 1 Property") and GW 2 is the owner of that certain real property located at 8930 Four Winds Drive, Windcrest, Texas 78239 (the "GW 2 Property" and together with the GW 1 Property, the "Properties"). The Properties are adjacent office buildings, as shown in the map attached as Exhibit 1 to this Declaration.

4.      GW 1 is a limited liability company with two members: Aulukista, LLC, which purportedly holds 68% of the membership interest in GW 1; and Global Windcrest Partners, LLC, which holds 32% of the membership interests in GW 1. GW 2 is also a limited liability company with the same two members holding the same respective percentage of membership interests.

5.      The Manager is the manager ("Manager") of both GW 1 and GW 2. Pursuant to the Debtors' respective Operating Agreements, the Manager is vested with broad powers and authority to manage the business and affairs of the Debtors.

7

6.      GW 1 was formed to acquire, improve, renovate, lease, and sell a recently vacated five (5) story office building on approximately 4.5 acres of land (the GW 1 Property).  The GW 1 Property's $3.5 million acquisition cost was to be paid by member contributions, and the extensive anticipated construction, renovation, improvement work necessary to rehabilitate the building and make it suitable for upscale office occupancy was to be funded through debt – i.e. borrowing.

7.      GW 2 was formed later, and acquired the contiguous property of approximately 3 acres on which an office building with improvement possibilities and upside potential was likewise present.

8.      Aulukista is indirectly owned and controlled by an entity known as Calista Corporation ("Calista") through various wholly-owned subsidiaries, all of which are under the control of an individual named Sharon Lechner, who purports to be the President of each such Calista subsidiary.  After receiving investment documentation and asking numerous questions, Calista expressed interest in providing equity for the GW 1 project (i.e. acquiring a membership interest through one of its multiple subsidiaries), but *only* on the condition that Calista be allowed to use another of its affiliates/subsidiaries as lender, providing the financing necessary to fund construction, renovation, and improvement of the GW 1 Property as well.

9.      Ultimately, Calista agreed to acquire the majority membership interest in GW 1 by and through Aulukista, with Sharon Lechner as Aulukista's president, as Calista's conduit.

10.     GW 1 was formed in April 2018 and took title to the GW 1 Property one month later.  In April 2019 Calista utilized another of its wholly-owned subsidiaries, Settler's Bay Properties, Inc. ("Settler's Bay"), with Sharon Lechner again as President, to provide the renovation/construction loan necessary to rehabilitate and improve the GW 1 Property, pursuant to that certain Loan Agreement dated April 19, 2019, pursuant to which GW 1 borrowed the sum of $7 million.  On April 22, 2019, a first position trust deed was recorded on the GW 1 Property in Texas.

11.     These bankruptcy cases were filed as a result of pending and numerous disputes between and among the Debtors, and Aulukista, Settler's Bay and Calista, including, without

limitation, disputes regarding the refinancing of the GW 1 Property, the funding for the GW 2 Property, and what the Debtors believe constitutes a coordinated scheme by Aulukista, Settler's Bay and Calista to improperly obtain ownership of the Properties to the detriment of all other creditors and interest holders of the Debtors, as discussed in detail in that certain "Amended Cross-Complaint For Injunctive And Declaratory Relief" filed by the Debtors against Aulukista and Calista, which is pending in the Superior Court of the State of California County of San Diego, Central Division, Case No. 37-2021-0022783-CU-MC-CTL.[3]    A true and correct copy of the amended cross-complaint is attached as Exhibit 2 to this Declaration.

12.    These bankruptcy cases were filed to stop the foreclosure sale of the GW 1 Property, and provide a breathing spell for the Debtors to attempt to obtain refinancing and/or funding, and/or restructure their debt obligations, on terms and in a manner that is in the best interest of all creditors and interest holders.  If Aulukista, Settler's Bay, and Calista are permitted to further execute their plan to improperly obtain ownership of the Properties in violation of their respective obligations and duties to the Debtors and other interest holders, and a foreclosure occurs, not only would GW 1 lose its ownership interest in the GW 1 Property, but GW 2 will be disadvantaged  because its tenants will not have legal access to the amenities on the GW 1 Property pursuant to a reciprocal access agreement between the Debtors, because it may very well not be able to meet its required parking ratio, and GW 2 may be in breach of leases it has already executed.  Moreover, assuming Calista, Aulukista, Settler's Bay and Ms. Lechner are unsuccessful in their plan to misappropriate the entirety of the GW 2 Property as well, GW 2 will be competing against Calista (which will then, through Settler's Bay, own the contiguous GW 1 Property) for tenants and will be at a disadvantage in doing so because of the lack of amenities and adequate parking.

13.    I believe that the joint administration of these cases will avoid duplicative expenses and will ensure that creditors and interested parties in the cases will receive appropriate notice of all pertinent matters.  In addition, I believe that the joint administration of these cases, including the

---

[3] The underlying complaint filed in that matter by Aulukista and Calista against the Debtors and the Manager has been dismissed, but the Debtors' cross-complaint remains pending.

use of a single pleadings docket, the combining of notices to interested parties of both estates, and the joint handling of purely administrative matters will aid in expediting the cases and rendering the process less costly, without prejudicing the substantive rights of any creditor.

14.    I understand granting the joint administration of these two cases will eliminate the further need for the Debtors to file duplicative motions and orders in each of these cases when seeking relief that is common to both Debtors, will avoid the further waste of judicial resources related to, for example, the docketing of identical motions, declarations and orders in each of the cases, and will allow the Debtors to avoid copying costs and service costs associated with filing and serving duplicative motions and other pleadings in the cases that seek collective relief.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 7ᵗʰ day of October, 2021, at Freeport, Maine.

_____
C.W. Tucker Lewis

# EXHIBIT "1"

8940 Fourwinds Dr - Google Maps                                    https://www.google.com/maps/place/8940+Fourwinds+Dr,+Windcrest,+TX+78239/@29.52331...



8930 Four Winds Drive
Windcrest, Texas

8940 Four Winds Drive
Windcrest, Texas

1 of 1                                                                                          10/7/2021, 8:34 AM

# EXHIBIT "2"

1
2
3
4

**Donald A. Vaughn, Esq. (Bar No. 110070)**
**VAUGHN & VAUGHN**
**501 West Broadway, Suite 1025**
**San Diego, CA  92101**
**Telephone: (619) 237-1717**
**Facsimile: (619) 237-0447**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**07/15/2021** at 06:04:00 PM

Clerk of the Superior Court
By Carolina Miranda,Deputy Clerk

5
6

Attorneys for Cross-Complainants GLOBAL
WINDCREST I, LLC; and GLOBAL
WINDCREST II, LLC

7

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### COUNTY OF SAN DIEGO, CENTRAL DIVISION

10
11
12
13

AULUKISTA, LLC, an Alaska Limited
Liability Company; and CALISTA
CORPORATION, an Alaska Corporation,
Plaintiffs,

Case No. 37-2021-00022783-CU-MC-CTL

14

vs.

**AMENDED CROSS-COMPLAINT FOR
INJUNCTIVE AND DECLARATORY
RELIEF**

15
16
17

GLOBAL WINDCREST I, LLC, a Delaware
Limited Liability Company; and GLOBAL
WINDCREST II, LLC, a Delaware Limited
Liability Company; GLOBAL BUILDING,
LLC, a Delaware Limited Liability Company,
Defendants.

Judge: Hon. Ronald F. Frazier
Dept.: C-65

Action Filed: May 24, 2021

18
19
20

GLOBAL WINDCREST I, LLC; and GLOBAL
WINDCREST II, LLC,
Cross-Complainants,

21

v.

22
23
24

AULUKISTA, LLC; CALISTA
CORPORATION; GLOBAL BUILDING, LLC,
and ROES 1-10,
Cross-Defendants.

25

26
27
28

For causes of action against Cross-Defendants AULUKISTA, LLC, and its controlling parent/alter ego CALISTA CORPORATION, and each of them, GLOBAL WINDCREST I, LLC and GLOBAL WINDCREST II, LLC (collectively "Cross-Complainants") allege as follows:

# I.

## **PRELIMINARY ALLEGATIONS**

1.     All allegations of the within Cross-Complaint are set forth on information and belief, under the doctrine of alternative pleading, without prejudice to any current or subsequent inconsistent, contrary, or contradictory allegation, and without prejudice to Cross-Complainants' right to plead and/or prove such different, further, separate, conflicting, or contradictory allegations or facts at or before time of trial.

2.     No claim, cause of action, prayer for relief, or remedy requested herein is, nor shall it be construed as, an election of remedies. All such remedies shall be preserved, and no election is intended or required until time of trial, and perhaps even after trial has concluded.

3.     Other than GLOBAL BUILDING, LLC, each Cross-Defendant herein was the principal, agent, master, servant, employer, employee, entrustor, entrustee, partner, affiliate, owner, member, manager, parent, subsidiary, trustee, beneficiary, alter ego, and/or co-conspirator of each other Cross-Defendant, and of the members or owners of each entity Cross-Defendant, and acted at all relevant times within the course and scope of such relationship, capacity, or agreement.

# II.

## **PARTIES**

4.     Cross-Complainants GLOBAL WINDCREST I, LLC ("GW 1") and GLOBAL WINDCREST II, LLC ("GW 2") are limited liability companies with their principal place of business in the County of San Diego, State of California. Cross-Defendants AULUKISTA, LLC and CALISTA CORPORATION initiated this lawsuit by suing Cross-Complainants as part of a concerted and coordinated strategy to misappropriate Cross-Complainants' assets.

5.     Cross-Defendant AULUKISTA, LLC ("Aulukista") purports to be an Alaska limited liability company. Aulukista is a sixty-eight percent (68%) Member of GW 1 and GW 2.

6.     The thirty-two percent (32%) Membership interest in both GW 1 and GW 2 is owned by Global Windcrest Partners, LLC, which is a limited liability company comprised of 10 investors.

VAUGHN & VAUGHN

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

7.      Cross-Defendant GLOBAL BUILDING, LLC ("Global Building") is the Manager of both GW 1 and GW 2, has extensive experience in office development/renovation/lease-up projects, and was also sued by the other Cross-Defendants herein as part and parcel of their coordinated scheme to misappropriate Cross-Complainants' assets.  As Aulukista and Calista judicially admitted by suing it, Global Building is an interested participant in the events these former Plaintiffs alleged in their voluntarily-dismissed Verified Complaint, and is affected by the relief Cross-Complainants seek such that Global Building is joined as a Cross-Defendant so that the relief for which Cross-Complainants pray can be effectively obtained herein.

8.      Cross-Defendant CALISTA CORPORATION ("Calista") is a large enterprise which conducts business through the use, manipulation, and control of multiple wholly-owned subsidiaries across the United States. Many of Calista's subsidiaries (including those involved in the within conspiracy to misappropriate Cross-Complainants' assets, namely Ena Holding, LLC, Tunista, Inc., Aulukista and Settler's Bay Properties, Inc.) are controlled and directed by the same individual – Sharon Lechner. Indeed, Ms. Lechner is the president of each and every one of the wholly-owned Calista subsidiaries listed above, thereby placing her in multiple irreconcilable conflicts of interest, which different and divergent positions of authority she has utilized in an effort to perpetrate the tortious scheme detailed herein. As explained in more detail below, Ms. Lechner's simultaneous control and manipulation of the Calista subsidiaries involved directly and indirectly in Global Windcrest appears to be the fundamental problem which requires Cross-Complainants to seek redress herein by way of expedited Injunctive Relief and a Declaratory Judgment from this Court.

9.      The Organization Chart appended hereto as Exhibit A and incorporated herein illustrates the insidious interrelationships and common control whereby Calista and Ms. Lechner have manipulated their corporate servants like pieces on a chessboard to seize Cross-Complainants' assets, and they are on the brink of doing so by charging ahead with foreclosure on the assets of GW 1 in breach of their fiduciary duties. Said Cross-Defendants have, among other malfeasance, utilized their Aulukista alter ego to prevent GW 1 from obtaining replacement financing, while simultaneously using their Settler's Bay Inc. ("Settler's Bay") alter ego to

1  foreclose upon a purportedly overdue trust deed held by Settler's Bay on the GW 1 property such

2  that Calista and its alter ego subsidiaries involved herein and up with all of Cross-Complainants'

3  assets and the other Members, and Manager, get nothing.

4     10. Based upon a unity of interest, the lack of any true formal separation, utter

5  dominance and control, and the use of multiple wholly-owned Calista subsidiaries to advance the

6  interest of other wholly-owned Calista subsidiaries and ultimately Calista itself in various

7  transactions (including those involved herein), it is clear that Aulukista, Settler's Bay, Ena

8  Holding, LLC, Tunista, Inc. and other involved wholly-owned Calista subsidiaries such as Real

9  Estate Ventures, LLC are a single, unitary enterprise with each entity being the alter ego of each

10  other wholly-owned Calista subsidiary, and controlling parent Calista itself. Additionally, based

11  upon manipulation, dominance, the lack of independent decision-making, common control,

12  commingling of funds, financial manipulation and internal transactions inconsistent with arms-

13  length dealings between unrelated companies, coordination of action for the benefit of the Calista

14  enterprise, the lack of formal separation, and a common, fraudulent, purpose, Calista is liable for

15  the actions of each of its alter ego entities involved in Global Windcrest, and Sharon Lechner, as a

16  result of the intentional and coordinated manipulation of each wholly owned Calista subsidiary

17  involved herein including, but not limited to, Aulukista and Settler's Bay. Further, recognition of

18  the purported separate existence of Calista's wholly-owned subsidiaries would perpetrate a fraud

19  and an injustice in which this Honorable Court should not, and may not, indulge by exalting form

20  over the true substance herein, namely that under all of the circumstances and facts, the alter ego

21  doctrine is established and in equity and good conscience must be applied.

22     11. The true names and capacities of Cross-Defendants ROES 1–50 are presently

23  unknown to Cross-Complainants, who sue said Cross-Defendants by such fictitious names.

24  Cross-Complainants will amend the within Cross-Complainant to accurately set forth the true

25  names, capacities, and involvement of such fictitiously named Cross-Defendants when the same

26  have been ascertained.

27  ///

28  ///

VAUGHN & VAUGHN

4

### III.

### <u>VENUE AND JURISDICTION</u>

12.     Venue is proper in this judicial district because Cross-Complainants are domiciled here, and Cross-Defendants have subjected themselves to the jurisdiction of this Court by suing Cross-Complainants in this forum.

### IV.

### <u>FACTUAL BACKGROUND</u>

13.     GW 1 was formed to acquire, improve, renovate, lease, and sell a recently vacated five (5) story office building on approximately 4.5 acres of land (the "Property") in Windcrest, Texas, a suburb of San Antonio. The Property's $3.5 million acquisition cost was to be paid by Member contributions, and the extensive anticipated construction, renovation, improvement work necessary to rehabilitate the building and make it suitable for upscale office occupancy was to be funded through debt – i.e. borrowing.  GW 2 was formed later, and acquired the contiguous property of approximately 3 acres on which an office building with improvement possibilities and upside potential was likewise present.

14.     Calista had not invested in any prior projects sponsored by Global Building but had periodically reviewed potential opportunities presented by Global Building since approximately 2011.  After receiving the investment documentation and asking numerous questions, Calista expressed interest in providing equity for the GW 1 project (i.e. acquiring a membership interest through one of its multiple subsidiaries), but ***only*** on the condition that Calista be allowed to use another of its affiliates/subsidiaries as lender, providing the financing necessary to fund construction, renovation, and improvement of the Property as well.

15.     After numerous modifications to the deal documentation were made to accommodate Calista, including: (1) allowing it to provide construction financing for improvements to the Property through a wholly owned and controlled subsidiary as it insisted, (2) giving Calista a right of first refusal to purchase the Property, and (3) giving Calista a free office on the Property, Calista agreed to acquire the majority membership interest in GW 1, using its wholly-owned real estate investment subsidiary and alter ego, Aulukista, as the conduit. In

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

actuality, however, Calista's multifaceted involvement with GW 1 and GW 2 was essentially placed in the hands of one person on a day-to-day basis – Sharon Lechner – who simultaneously served as President of, among other entities in the sprawling Calista enterprise, Ena Holding, LLC, its wholly owned subsidiary Tunista, Inc., its wholly owned subsidiary Settler's Bay (which Calista used to provide construction financing for GW 1), and another wholly-owned Ena Holding, LLC subsidiary, Respondent Aulukista.

16.     GW 1 was formed in April 2018 and took title to its property (the "GW 1 Property") one month later (i.e. in May of 2018). In April 2019 Calista utilized wholly-owned subsidiary Settler's Bay to provide the renovation/construction loan necessary to rehabilitate and improve the GW 1 Property.  On April 22, 2019, a first position Trust Deed was recorded on the Property in Texas.

17.     A few months later (in August of 2019), Sharon Lechner, who both then and now was and still is contemporaneously President of both Aulukista (68% Member) and Settler's Bay (Lender), asserted that GW 1 should quickly locate another lender to prepay and retire the Loan, and that replacement financing should be secured by **both** the GW 1 Property and the GW 2 property. The Manager also anticipated the need for additional financing due to increased capital costs. Based upon these considerations, including Sharon Lechner's directive to locate replacement financing on the suggested terms, the Manager searched for a lender to satisfy these needs.

18.     In mid-December 2019 (while the search for replacement financing was well underway), Aulukista/Settler's Bay claimed that GW 1 was in default on the existing loan and dictated that, effective January 2, 2020, a default interest rate of 11% would begin accruing on the Loan. This was done in violation of the default provisions of the loan agreement which required the lender give formal notice and a 30-day period in which to correct (i.e., cure) any alleged default.

19.     In December 2019 the Manager received a quote for potential financing with an anticipated interest rate in the 5.25% range. This loan would have materially benefited the Company and all of its members, as interest on the existing loan was at a rate of 7.75% per annum

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

and, as noted above, 11% if the default rate was applicable as Aulukista/Settler's Bay claimed. On behalf of Aulukista/Settler's Bay, Ms. Lechner subsequently purported to reject this possibility, even though Aulukista/Settler's Bay had no veto power over financing.

20.    In January, 2020, the Manager obtained another proposal for alternative bridge financing on the contiguous unencumbered property owned by GW 2, which funding could be used to pay for increased capital costs. Again, Aulukista/Settler's Bay purported to "reject" this solution, indicating that the proposed interest rate of 10.5% was "too high" – despite the fact they were charging 11% on the existing loan as purported default interest. Later in January, with the 11% "default rate" still accruing, Aulukista/Settler's Bay preemptively rejected other reasonable solutions for GW 1 and GW 2 even though the borrowing alternatives had a significantly longer term than the loan in place, which loan Ms. Lechner had previously urged should be replaced.

21.    In early February, 2020, a conference call was held to discuss options for project financing. During the call, Sharon Lechner, again acting concurrently as President of Aulukista and Settler's Bay, asserted that she wanted to keep the Settler's Bay Loan in default "for as long as possible" so that Settler's Bay could continue to collect interest at the elevated default interest rate. In so doing, Ms. Lechner exemplified her irreconcilable conflict of interest and divided loyalties, and the conflict between Aulukista's duties as majority Member and Settler's Bay's position as lender. In breach of Aulukista's fiduciary obligations, Ms. Lechner caused Aulukista to purportedly reject beneficial replacement financing (which she had recommended just six months earlier) so that Calista's Settler's Bay subsidiary (which Ms. Lechner also controlled as President), and thus Calista itself, could reap unwarranted profits at the expense of GW 1 and all of its Members.

22.    On February 10, 2020, Aulukista/Settler's Bay sent the Manager a letter reiterating their claim, on behalf of both wholly-owned Calista subsidiaries, that the loan was in default, that the "default interest rate must be charged," and that Ms. Lechner (and the Calista subsidiaries she controlled) now would not "allow" any cross collateralization of the GW 1 and GW 2 Properties. Ms. Lechner's startling "about-face" was an inexplicable repudiation of the course of conduct she had recommended Global Windcrest pursue just six months earlier. Mere days later, pursuant to

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    the Manager's earlier effort toward obtaining replacement financing as actually suggested by Ms.

2    Lechner, Cross-Complainants received a third party lender's loan quote which would have

3    resolved not only current issues, but which would also provide attractive financing necessary for

4    the GW 2 renovation costs, as contemplated from the outset. This loan would have required that

5    the lender receive a security interest on both the GW I Property and the GW 2 property, which

6    collective financing Ms. Lechner (on behalf of Aulukista/Settler's Bay) had herself recommended

7    in August of 2019, but now supposedly "rejected" in February of 2020.

8          23.     In retrospect, it is apparent that Ms. Lechner's complete reversal was motivated by

9    her intent to misappropriate Cross-Complainants' property through manipulation of the various

10    Calista subsidiaries she controlled.  It was also a violation of both Global Windcrest Operating

11    Agreements because, among other rights, the Manager has the power to obtain financing

12    consistent with the investment plan of both companies, which plan (as Aulukista agreed) explicitly

13    contemplated loans would be obtained to fund the improvements all parties understood from the

14    very beginning were necessary to advance each of these projects. In other words, as discussed in

15    more detail below, Aulukista/Settler's Bay had no right or "veto power" to interfere with this

16    financing for multiple reasons. The Manager, however, continued to look for solutions acceptable

17    to all Members, rather than taking a categorical, adversarial, legal stand at that time.

18          24.     In early/mid-March, 2020, after extensive and diligent negotiation by the Manager

19    and efforts to mitigate potential risks by obtaining longer term financing for improvements to the

20    GW 1 Property, the Manager was able to secure revised proposed financing from the same lender

21    for both GW 1 and GW 2 with the cross collateralization requirement removed. Both of these

22    loans required additional capital from the members of GW 1 and GW 2, and this revised proposal

23    was immediately provided to Aulukista/Settler's Bay which responded (through Ms. Lechner)

24    nearly 2 weeks later that this new financing would be only partially "approved" and, even in that

25    instance, all principal and interest at the default rate must be paid to Settler's Bay. Due to Ms.

26    Lechner's delay, this lender indicated that they could no longer commit to provide financing at the

27    favorable 5.25% interest rate they had quoted; the rate would, however, still be significantly below

28    the 11% default rate which Aulukista/Settler's Bay continued to demand.

25.     In purporting to reject this proposal, Ms. Lechner admitted her true motivation was to benefit Aulukista/Settler's Bay/Calista without regard to the interests of *either* Global Windcrest entity or other Members. Specifically, Ms. Lechner admitted she was "rejecting" this solution because: "[Our] interest income dries up to zero when the [Settler's Bay loan] is paid off so [our] earnings go away..." Ms. Lechner further exemplified the irreconcilable conflict of the dual roles she continued to occupy by asserting that: "Because someone else steps into my shoes as lender, I suddenly place my entire equity, which is now $1.5 m or so larger than before, at risk of loss!" Ms. Lechner's purported rejection of this favorable alternative financing for these reasons is an outright admission that she placed the interest of Settler's Bay – and the ultimate beneficiary of excessive interest based upon her fabricated defaults, Calista – ahead of the interests of the LLCs to which Aulukista owed a fiduciary duty, ahead of the interests of the minority Member to which fiduciary duties were likewise owed under the circumstances presented herein, and even ahead of the interest of Aulukista if it was truly an independent Member of Global Windcrest, because all Members would benefit from a lower interest rate and other beneficial terms.  Clearly, no such independence exists and Ms. Lechner's conduct while in an irreconcilable conflict of interest, and her actual *admissions* to this effect, constitute patent breaches of fiduciary duty.

26.     Later, Aulukista/Settler's Bay purportedly offered to take the loan out of default, but only after seeking to extract numerous concessions from GW 1, including an agreement that GW 1 acquiesce to raising the base interest rate from 7.75% to 8.5% for the remainder of its term. This extortionate demand sought to coerce GW 1 to embrace an interest rate much higher than any of the rates proposed by a potential lender, and significantly higher than the initial approximately 5.25% rate which could have been obtained had Aulukista/Settler's Bay not breached the Operating Agreement and their fiduciary duties by purporting to "disapprove" this beneficial opportunity when it was first presented. Cross-Complainants could not agree to these Cross-Defendants' self-serving loan modification and other overreaching conditions, and Aulukista/Settler's Bay continues to demand that the default interest be paid. Indeed, Ms. Lechner has caused Settler's Bay to initiate and aggressively pursue foreclosure on the GW 1 Property, which would eliminate the interest of all other parties in this project – *even Aulukista itself*.

27.     This conduct by Cross-Defendants Aulukista/Settler's Bay and Calista impeded Cross-Complainants from obtaining financing on terms which were more favorable to GW 1, did not provide any means to finance future tenant improvements on either property, and exposes Cross-Complainants to imminent loss of their property since the loan is purportedly all due and payable and Cross-Defendants Aulukista/Settler's Bay and Calista have refused to honor GW 1's loan extension rights. Cross-Complainants duly exercised their right to extend the term of the loan, but said Cross-Defendants continue to rely upon their purported contrived "defaults" and other meritless, falsified contentions as a supposed basis for illegally and improperly refusing to comply with the terms of that extension – so that they can misappropriate the Property through the artifice of having Settler's Bay foreclose thereon. Cross-Defendants demands and insistence they have veto power over financing continues to violate the Operating Agreements, are the product of an irreconcilable conflict of interest, constitute patent breaches of fiduciary duty, are an impediment to the necessary financing, and expose Cross-Complainants to imminent, irreparable, and irremediable harm.  Ms. Lechner's plan is now clear: use "her" Settler's Bay loan to foreclose upon the GW 1 Property by preventing the LLCs from obtaining any financing which would replace said loan while relying upon contrived, nonsensical, "defaults" which have been utterly refuted as a meritless justification for refusing to comply with GW 1's right to extend the Loan.

28.     Cross-Defendants Calista and Sharon Lechner employed similar tactics with respect to GW 2. Just as in GW 1, Calista and Ms. Lechner required that Calista (or one of its multiple subsidiaries) have the first right of refusal to provide financing for renovation of the GW 2 property which is contiguous to that owned by GW 1, through an entity known as Real Estate Ventures, LLC, another Calista subsidiary which is likewise controlled by none other than Sharon Lechner.  In this instance, although all parties intended and agreed that renovation of the GW 2 property would be funded through borrowing, such a loan was not initially needed or taken.  GW 2 subsequently obtained a loan commitment from a third party lender. Ms. Lechner, however, objected to this financing and, instead, demanded these necessary funds be obtained through a member "capital call" or, alternatively, "she" would provide a loan at a "little" higher interest rate with a "little" higher loan fees.

29.     Cross-Defendants Aulukista and Calista breached the Operating Agreement by attempting to extract more money from GW 2 while the governing document gave them only a first right of refusal to *match* said third-party terms, and accompanied this extortionate proposal with a demand that extensive modifications beneficial only to Calista and its wholly owned subsidiaries be made to the Operating Agreement. Although neither Aulukista, Calista, nor Ms. Lechner had the right to dictate that a capital call must instead be used, or the right to purportedly "disapprove" lower cost borrowing in favor of their own higher cost loan and unfavorable modifications to the Operating Agreement, GW 2 was compelled to acquiesce to the use of a capital call.

30.     When the minority Member indicated it would not be able to fund its portion of the capital call upon which the Calista Cross-Defendants insisted, Ms. Lechner then came up with the idea to "loan" the minority Member the amount necessary to meet its portion of the capital call – while securing said loan by the minority Member's interest in GW 2. In retrospect, Ms. Lechner's illegal plan to seize the assets of both Cross-Complainants is now even more clear: (1) prevent any replacement of her Settler's Bay loan so that Calista can increase the amount supposedly owed thereon and foreclose it, eliminating the minority Member and the Manager while seizing this Property for itself; (2) dictate in violation of the Operating Agreement that financing on the GW 2 Property cannot be obtained, thereby preventing Cross-Complainants from accessing this source of funding, (3) insist that a capital call be made for a short term sum then agree to "loan" money to the minority Member of GW 2 secured by the minority Member's interest in GW 2 and, finally, (4) foreclose on the minority Member's interest, with Calista ultimately owning the entirety of both multimillion dollar properties.

31.     During this same period of time, while purporting to "veto" necessary financing through available loans if such a borrowing was secured by both properties, Ms. Lechner nevertheless encouraged GW 1 to give tenants of the GW 2 Property access to common areas on the GW 1 Property by entering into a "reciprocal access agreement." Such an arrangement would benefit GW 2's tenants because it would provide them the ability to use amenities on Cross-Complainants' other Property not present on the GW 2 property. Ms. Lechner was also aware of,

1   and never objected to, an arrangement whereby GW 1 will transfer to GW 2 a portion of the

2   former's Property without receiving any return monetary consideration, so that GW 2 can meet its

3   required ratio of parking spaces for tenants in the building on GW 2 Property. These arrangements

4   were disclosed to and permitted by Ms. Lechner, who indeed actively encouraged the reciprocal

5   access agreement even while she intended to generate fabricated purported "defaults" under which

6   Calista and its alter ego subsidiaries which she controls can obtain ownership of the GW 1

7   Property through foreclosure. If this occurs, GW 2 will be disadvantaged because its tenants will

8   not have legal access to the amenities on the GW 1 Property, because it may very well not be able

9   to meet its required parking ratio, and GW 2 may be in breach of leases it has already executed.

10   Moreover, assuming the Calista Cross-Defendants are unsuccessful in the second phase of their

11   plan to misappropriate the entirety of the GW 2 property as well, GW 2 will be competing against

12   Calista (which will then, through Settler's Bay, own the contiguous GW 1 Property) for tenants

13   and will be at a disadvantage in doing so because of the lack of amenities and adequate parking.

14        32.     Thus, Ms. Lechner, Aulukista and Calista have again breached their duties to GW

15   2 because Cross-Defendants have favored their own interest in maneuvering to foreclose on the

16   GW 1 Property which imposes these undesirable consequences with significant financial impact

17   upon GW 2. Such conduct is, again, the product of an irreconcilable conflict of interest whereby

18   Sharon Lechner is manipulating the various Calista entities involved in these transactions so that

19   her corporate patron profits, while the LLCs are disadvantaged – and indeed destroyed by design –

20   with Calista owning all of the assets at the end of the day.

21   **V.**

22   **FIRST CAUSE OF ACTION**

23   (Declaratory Relief Against all Cross-Defendants)

24        33.     Cross-Complainants incorporate by reference as though fully set forth again at this

25   place paragraphs 1 through 32, above.

26        34.     Aulukista is a Member of GW 1 and a signatory to the GW 1 Operating

27   Agreement.  Aulukista is also a Member of GW 2 and a signatory to the GW 2 Operating

28   Agreement. Calista, by design, secured numerous rights beneficial only to itself in the Global

VAUGHN & VAUGHN

12

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Windcrest Operating Agreements and thereby, and otherwise, directed, ratified and adopted the provisions thereof, binding it to the terms thereof, in addition to their applicability by virtue of the fact Calista is the alter ego of Aulukista, Settler's Bay, and its other involved subsidiaries.

35.     The GW 1 and GW 2 Operating Agreements and incorporated documentation are written instruments and contracts in which both Cross-Complainants and Cross-Defendants are interested, and pertain to Cross-Complainants' investment real property.

36.     An actual and justiciable controversy exists with respect to the parties' rights and duties in the premises, including the question of construction of the subject written instruments.

37.     Specifically, by way of example and not limitation, Cross-Complainants contend that, under the Operating Agreements, their associated documentation, and Cross-Defendants' express agreement, financing was expressly contemplated and is a component of the investment plan to which Cross-Defendants agreed, and does not require consent or approval by Aulukista or Calista. Cross-Defendants Aulukista and Calista, however, contend they had and have the power and authority to dictate the terms of all Global Windcrest borrowing, and contend that they are empowered to prevent such borrowing entirely if they wish to do so in their sole and unfettered discretion – without regard to the impact on Cross-Complainants and/or their property. Cross-Defendants Aulukista and Calista have, on this basis, impeded and prevented replacement financing from being obtained. Thus, a declaration of the parties' rights and duties under the Operating Agreements with respect to this financing issue is immediately, indeed urgently, necessary.

38.     Finally, a Judicial Declaration of the parties' rights and duties under the Operating Agreements is essential because, even assuming *arguendo* the incorrect interpretation of the Operating Agreements urged by Aulukista and Calista is accurate when it is not, said Cross-Defendants' conflicts of interest in utilizing Aulukista to prevent replacement financing so that Settler's Bay can foreclose disqualifies any voting or approval rights they might otherwise have on these subjects, even if such rights existed, which is expressly denied. The concept that a party in a partnership relationship can do wrong but prevent any recourse against them for those misdeeds by voting against it is insanity which the law does not – and cannot – embrace.

VAUGHN & VAUGHN

13

39.     Thus, an immediate and urgent declaration of the parties' rights and duties under the Operating Agreements in the factual context presented herein is essential because, otherwise, Cross-Complainants' unique and irreplaceable real property will be irretrievably lost.

40.     Further, because actual sale in the pending foreclosure of the GW 1 Property is imminent, injunctive relief in the form of a Temporary Restraining Order and Preliminary Injunction is essential to preserve the *status quo* and prevent irremediable injury through Cross-Complainants' loss of this valuable real property. Such disastrous forfeiture can be averted by obtaining replacement financing to extinguish the debt being foreclosed upon by Settler's Bay at the instance of Cross-Defendants Aulukista and Calista. In order to obtain such replacement financing, Cross-Complainants must have this Court's order permitting them to do so, without interference or objection by Cross-Defendants Aulukista and Calista. Without such interim relief, replacement financing cannot be obtained and, in the absence thereof, the Settler's Bay debt upon which the pending foreclosure is based cannot be extinguished and replaced.

WHEREFORE, Cross-Complainants, and each of them, pray for Judgment as follows:

1.     For a declaration of the parties' rights and duties under the involved portions of the GW 1 and GW 2 Operating Agreements in the factual context presented herein;

2.     For an immediate expedited trial pursuant to California Code of Civil Procedure section 1060;

3.     For temporary, preliminary, and permanent injunctive relief to preserve the *status quo* and prevent irretrievable injury and irreparable loss to Cross-Complainants, and;

3.     For such other and further relief as the Court may deem just and proper.

Dated: July 15, 2021                              VAUGHN & VAUGHN


By: /s/ Donald Vaughn
    DONALD A. VAUGHN
    Attorneys for Cross-Complainants, GLOBAL
    WINDCREST I, LLC and GLOBAL
    WINDCREST II, LLC

VAUGHN & VAUGHN

AMENDED CROSS-COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

# EXHIBIT A

# Global Windcrest I, LLC



**Calista Owned Equity**

## Aulukista, LLC
An Alaska limited liability company
**Sharon Lechner**, President
68% Majority Owner of Global Windcrest I, LLC

*AULUKISTA HAS MALICIOUSLY AND FALSELY ASSERTED THAT IT'S MAJORITY VOTING RIGHTS ALLOW IT TO APPROVE ALL DEBT AND HAS REFUSED TO CONSENT TO LOWER RISK, LOWER COST DEBT TO REPLACE THE EXISTING DEBT OF IT'S OWN SISTER COMPANY "SETTLER'S BAY PROPERTIES, INC."*

## Calista, Inc.
An Alaska corporation
**"100% Beneficial Owner of All Subsidiaries"**

100% Owner

## Ena Holding, LLC.
An Alaska limited liability company
**Sharon Lechner**, President

100% Owner →

**Calista Owned Debt**

## Tunista, Inc.
An Alaska corporation
**Sharon Lechner**, President

100% Owner

## Settler's Bay Properties, Inc.
An Alaska corporation
**Sharon Lechner**, President
Lender in 1st Lien Position

*SETTLER'S BAY IS NOW ATTEMPTING TO FORECLOSE ON THE PRIMARY REAL ESTATE ASSET OWNED BY GLOBAL WINDCREST I, LLC IN COORDINATION WITH IT'S SISTER COMPANY "AULUKISTA, LLC" THAT WILL WIPE OUT THE EQUITY OF THE MINORITY PARTNER, GLOBAL WINDCREST PARTNERS, LLC*

**68% of the Equity**

## Global Windcrest I, LLC
A Delaware limited liability company
*Owns 81,555 square foot recently remodeled office building located in Windcrest, Texas*

**100% of the Debt** →

**32% of the Equity**

## Global Windcrest Partners, LLC
A Delaware limited liability company
Global Building, LLC, Manager
32% Minority Owner of Global Windcrest I, LLC
Owners:
1. Natives of Kodiak Shareholder Trust
2. Tammax, LLC (Max Di Leo)
3. Becker Properties, LLC
4. Aviara Carlsbad (Kerry Marsh)
5. Carl Kuhn (HooDoo Capital)
6. Dr. Girish Patel
7. Newday, LLC
8. James T. Smith
9. The CWT Lewis Exempt Family Trust
10. Giancarlo Garonna

**Property Manager**

## Global CRES, Inc.
A California corporation holding a corporate real estate license from the State of California
100% Owned by Global Building

**LLC Manager**

## Calista Corporation Settlement Trust
Controlled by Calista, Inc.

## Global Building, LLC
A Delaware limited liability company

# EXHIBIT "3"

**CSD 1001A** [07/01/18]

Name, Address, Telephone No. & I.D. No.

Ron Bender (SBN 143364)
Krikor J. Meshefejian (SBN 255030)
Levene, Neale, Bender, Yoo & Brill L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Tel: (310) 229-1234
Email: RB@LNBYB.COM; KJM@LNBYB.COM

## UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

GLOBAL WINDCREST I, LLC

Debtor.

BANKRUPTCY NO. 21-03935-LT11

Date of Hearing: N/A
Time of Hearing: N/A.
Name of Judge: Hon. Laura S. Taylor

## ORDER ON

**EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES**

The court orders as set forth on the continuation pages attached and numbered <u>2</u> through <u>3</u> with exhibits, if any, for a total of <u>3</u> pages.  Motion/Application Docket Entry No. _____.

//

//

//

//

//

//

//


DATED: _____

_____
Judge, United States Bankruptcy Court

CSD 1001A [07/01/18]                                                                                                    Page **2** of **2**

ORDER ON EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF RELATED
CHAPTER 11 CASES
DEBTOR:
GLOBAL WINDCREST I, LLC                                                                     CASE NO: 21-03935-LT11

---

The Court, having read and considered that certain "Debtor's Ex Parte Motion For Entry Of AN Order For Joint
Administration Of Related Chapter 11 Cases Pursuant To Rule 1015(b) Of The Federal Rules Of Bankruptcy Procedure
And Rule 1015 Of The Local bankruptcy Rules" (the "Motion") [Doc ____] filed by Global Windcrest I, LLC, chapter 11
debtor and debtor in possession (the "Debtor"), with good cause appearing, orders as follows:

1.  The Motion is granted on an interim basis.  The Debtor shall provide notice of the entry of this order to all creditors,
and such creditors shall have fourteen days from the date of service of the notice of the entry of this order to file an
opposition to the Motion.  If an opposition is not timely filed, the Debtor shall lodge an order with the Court granting the
Motion on an final basis.

2.  Until further Court order, and on an interim basis, all future filings, lodging and docketing of pleadings, orders, and
other papers served or filed in the In re Global Windcrest I, LLC case (Case No. 21-03935-LT11) or in the In re Global
Windcrest II, LLC case (Case No. 21-03938-LT11) shall be filed, lodged, or docketed under the lead case number
assigned to Global Windcrest I, LLC (Case No. 21-03935-LT11).  The caption shall be modified to reflect the joint
adminsitration of the cases in the form set forth in Exhibit A attached to this Order.

3.  Until further Court order, and on an interim basis, for all future filings in the cases, a combined service list shall be
used and combined notices shall be sent to creditors.

4.  Notwithstanding anything contained herein or in the Motion, separate claims registers shall be maintained for the
cases.

5.  Any deviation from these procedures will be by order of the Court.

IT IS SO ORDERED.

**1**

**EXHIBIT A**

**2**

**3**

**4**

**5**

**6**

**7**

**8**    **UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**9**    In re:                                     Case No.: 21-03935-LT11

**10**

**11**   GLOBAL WINDCREST I, LLC,           [Jointly administered with: 21-03938-LT11]

**12**                      Debtor.             Chapter 11 Cases

**13**   _____

**14**   In re:

**15**   GLOBAL WINDCREST II, LLC

**16**                      Debtor.

**17**   _____

**18**   ☐ Affects both Debtors

**19**   ☐ Affects Global Windcrest I, LLC

**20**   ☐ Affects Global Windcrest II, LLC

**21**

**22**

**23**

**24**

**25**

**26**

**27**

**28**

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 1015 OF THE LOCAL BANKRUPTCY RULES; DECLARATION OF C.W. TUCKER LEWIS IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 7, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com, bry@lnbyb.com
- Krikor John Meshefejian    kjm@lnbyb.com
- Kristin Mihelic    Kristin.T.Mihelic@usdoj.gov, tiffany.l.carroll@usdoj.gov,abram.s.feuerstein@usdoj.gov
- United States Trustee    ustp.region15@usdoj.go

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **October 7, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 7, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 7, 2021 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0974-3
Case 21-03935-LT11
Southern District of California
San Diego
Thu Oct  7 15:20:05 PDT 2021

Global Windcrest I, LLC
1947 Camino Vida Roble
Suite 280
Carlsbad, CA 92008-6540

United States Trustee
Office of the U.S. Trustee
880 Front Street
Suite 3230
San Diego, CA 92101-8897

U.S. Bankruptcy Court
Jacob Weinberger U.S. Courthouse
325 West F Street
San Diego, CA 92101-6991

Big Sun Community Solar
110 E Houston St. 7th Floor
San Antonio, TX 78205-2991

CPS Energy
PO Box 2678
San Antonio, TX 78289-0001

Cogency Global Inc.
1601 Elm Street
Suite 4360
Dallas, TX 75201-4701

GFS Industries, LLC
24165 IH-10 W, Suite 217-138
San Antonio, TX 78257-1449

Global Building, LLC
1947 Camino Vida Roble, Suite 280
Carlsbad, CA 92008-6540

Global CRES, Inc.
1947 Camino Vida Roble, Suite 280
Carlsbad, CA 92008-6540

Jackson Walker, LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201-2725

Kristin Mihelic
Office of the U.S. Trustee
880 Front Street  Suite 3230
San Diego, CA 92101-8897

Langley & Banack Incorporated
Attn: Steven R. Brook
745 East Mulberry, Suite 700
San Antonio, TX 78212-3172

Lawmen Security, Inc
PO Box 700031
San Antonio, TX 78270-0031

Oracle Elevator Holdco, Inc
Dept # 9901, PO Box 850001
Orlando, FL 32885-9901

PointHR, Inc.
3535 Firewheel Dr., Suite B
Flower Mound, TX 75028-7719

Settler's Bay Properties, Inc.
3301 Denali Street
Suite 300
Anchorage, AK 99503-4051

Tabco Enterprises, Inc.
18023 Gable Oak Lane
Cypress, TX 77433-2190

Vaughn & Vaughn
501 West Broadway Street
Suite 1025
San Diego, CA 92101-3546

Worldwide Pest Control
5808 IH 10 West
San Antonio, TX 78201-2851

Krikor John Meshefejian
Levene, Neale, Bender, Yoo & Brill L.L.P
2818 La Cienega Avenue
Los Angeles, CA 90034-2645

Ron Bender
Levene, Neale, Bender, Yoo & Brill L.L.P
2818 La Cienega Avenue
Los Angeles, CA 90034-2645

End of Label Matrix
Mailable recipients    21
Bypassed recipients     0
Total                  21